UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY EDWARDS,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>J.W. COX, Individual and official capacity, DR. ROCK BOYD, Individual and official capacity, DR. WILLIAM PIERCE, Individual and official capacity, NURSE CARLA STEPPAD, Individual and official capacity, COUNSELOR S. MERTENS, Individual and official capacity, UNIT MGR J. STERNHAGEN, Individual and official capacity, CASE MGR S. THYGESON, Individual and official capacity, and LEGAL DEPT L. ALLEN, Individual and official capacity,<br><br>　　　　　Defendants. | 4:20-CV-04130-KES<br><br><br>ORDER 1915A SCREENING FOR SERVICE AND DENYING MOTION FOR SUMMONS, DISCOVERY, AND EXPERT TESTIMONY |

Plaintiff, Timothy Edwards, filed a pro se civil rights lawsuit under 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and 42 U.S.C. §§ 1985, 1986. Docket 1 at 1. Edwards also moves for summons, discovery, and expert testimony. Dockets 5, 6, 7.

## I.　1915A Screening

### A.　Factual Background

The facts alleged in Edwards's complaint are: Edwards claims that Dr. Boyd violated Edwards's Eighth Amendment rights when Dr. Boyd sexually assaulted him. Docket 1 at 5, 14. Edwards alleges that Dr. Boyd "aggressively

pulled down [Edward's] underwear and pulled on [his] penis" and testicles. *Id.* at 5. Edwards contends that there was no need for Dr. Boyd to forcibly disrobe Edwards because Edwards was not asked to remove his clothes and he was conscious and compliant during his examination. *Id.* at 6, 14. Nurse Steppad was also in the examination room during the alleged sexual assault, but Edwards claims that she did nothing. *Id.* at 6. Edwards alleges that Dr. Boyd committed the sexual assault purposefully, intentionally, sadistically for sexual gratification, and to humiliate Edwards in front of a female nurse. *Id.* at 5, 11. Edwards claims that he had pain in his penis and testicles for five days after the incident. *Id.* at 5. He also suffered from severe emotional damage like anxiety, depression, lack of sleep, suicidal thoughts, and fear. *Id.*

Edwards claims that Dr. Boyd, Dr. Pierce, Steppad, and Mr. S. Mertens violated his Eighth Amendment right to recieve adequate medical and psychological care. *Id.* at 6. Edwards contends that Dr. Pierce denied Edwards psychological treatment. *Id.* at 13. Dr. Pierce did not follow up on Edwards's well-being other than once or twice after the incident. *Id.* at 6.

Additionally, Edwards claims that Federal Prison Camp Yankton (FPC Yankton) staff have worked together to deny Edwards medical treatment for conditions for which they diagnosed him. *Id.* at 8, 11-13. Edwards contends that his presentence investigation report shows that his medical conditions include steel ankle and swollen lymph nodes in his left neck. *Id.* at 6. These conditions have worsened during his time at FPC Yankton. *Id.* Also, Dr. Boyd and Dr. Pierce have diagnosed Edwards with blurred vision, headache pain,

2

and hip popping/pain. *Id.* Dr. Pierce diagnosed Edward's pain as post-traumatic stress disorder (PTSD). *Id.* at 6, 14. Edwards claims that defendants have deliberately chosen to not treat these conditions. *See id.* at 6, 14-15. Edwards still suffers from severe headaches, blurred vision, ringing in ears, temple pain, ankle pain, hip joint popping, and constant pain. *Id.* at 6. Edwards claims that Warden Cox, Sternhagen, and Thygeson failed in their supervisory roles to prevent this mistreatment. *Id.* at 8.

Edwards also alleges that defendants violated his Eighth Amendment rights when they failed to protect him. Edwards contends that Dr. Pierce failed his duty as a medical advocate to protect Edward's welfare and emotional trauma when he ordered Edwards to return to the scene of the sexual assault. *Id.* at 6, 8, 13. Additionally, Edwards claims that Dr. Boyd, Dr. Pierce, Cox, Steppad, Mertens, Stenhagen, Allen, and Thygeson threatened Edwards's safety when they did not comply with the Prison Rape Elimination Act (PREA) protocol or Bureau of Prisons (BOP) policy to protect inmates from their attackers. *Id.* at 7, 8. Edwards told Mertens about the sexual assault. *Id.* at 13, 14. Mertens informed other staff members about the assault, specifically Dr. Boyd. *Id.* Mertens also discussed the assault with Sternhagen. *Id.* at 14. Edwards personally informed Cox about the alleged sexual assault. *Id.* at 15.

Edwards claims that Dr. Boyd continued to sexually harass Edwards and made sexual gestures at Edwards during lunch. *Id.* at 7. Edwards claims that he made repeated complaints to defendants about the continued harassment and that Edwards feared for his safety and well-being. *Id.* Edwards alleges that

3

he requested a transfer to a different facility from each individual defendant. *Id.* at 7. Defendants intentionally put Edwards "in harm's way" when they refused his repeated requests to be transferred after Dr. Boyd's sexual assault. *Id.*

Edwards claims that defendants conspired to conceal and cover up Edwards's sexual assault allegation, his incident report, and PREA claim. *Id.* at 7, 13-15. Edwards told Cox about the sexual assault, and Cox covered up for staff. *Id.* at 14-15. Defendants attempted to deny Edwards access to the PREA auditor. *Id.* at 7. Additionally, Edwards alleges that defendants conspired to deprive Edwards of compassionate release under the CARES Act. *Id.* at 8.

Lastly, Edwards contends that defendants violated Edwards's First Amendment right to be free from retaliation. *Id.* Edwards claims that defendants retaliated against him by denying that Edwards had any of the medical conditions that the Centers for Disease Control and Prevention (CDC) recognizes as risk factors for severe illness from COVID-19. *Id.* at 7, 8. This prevented Edwards from being eligible for compassionate release under the CARES Act. *Id.* at 7. Edwards claims that defendants also retaliated against Edwards by depriving him of medical treatment. *Id.* at 8.

### B.    Legal Standard

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts

supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true[.]" *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "[are] (1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.   Legal Analysis

### 1.   Official Capacity Claims

"A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting *in his or her individual capacity* for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (emphasis added) (citing *Bivens*, 403 U.S. 388); *see also Little v. South Dakota*, No. 5:14-CV-05069-JLV, 2014 WL 6453844, at *3 (D.S.D. Nov. 17, 2014) ("A *Bivens* action may not be asserted against the United States, its agencies, or against federal employees in their *official* capacity." (internal quotation omitted)).

Here, Edwards claims are against defendants in their individual and official capacities as the warden or staff of FPC Yankton. Docket 1 at 2-3. A suit against defendants in their official capacity is treated as a suit against the Federal Bureau of Prisons, an agency of the United States. *See Buford*, 160 F.3d at 1203. "[A] *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *Id.* And "*Bivens* and its progeny do not waive sovereign immunity for actions against the United States[.]" *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982). Thus, the court finds that the doctrine of sovereign immunity bars Edwards's claims against any federal defendant sued in their official capacities.

### 2.   Individual Capacity Claims

### a.  Eighth Amendment Claims

Edwards brings several Eighth Amendment claims against defendants. In *Bivens*, the Supreme Court recognized a cause of action for implied damages against federal officers in their individual capacities for violations of the Fourth Amendment. 403 U.S. at 393-94. Additionally, the Supreme Court has recognized a *Bivens* remedy for violations of the Fifth Amendment and the Eighth Amendment. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citing *Davis v. Passman*, 442 U.S. 228, 249 (1979); *Carlson v. Green*, 446 U.S. 14, 24 (1980)).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[O]nly the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (citation and internal quotations omitted).

### i.   Sexual Assault

A prison official's sexual assault or harassment of an inmate can, under certain circumstances, "constitute the unnecessary and wanton infliction of pain forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (internal citation and quotations omitted); *see also Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). A plaintiff bringing an Eighth Amendment claim for sexual abuse must "prove, as an objective matter,

that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338.

Edwards claims that Dr. Boyd violated his Eighth Amendment right when Dr. Boyd sexually assaulted Edwards by pulling on Edwards's penis and testicles. Docket 1 at 5, 14. Edwards alleges that the sexual assault caused him pain in his genitals. *Id.* Edwards has also alleged facts showing that Dr. Boyd acted with a culpable state of mind. Edwards claims that Dr. Boyd pulled on his penis purposefully and intentionally for his sexual gratification and to humiliate Edwards. *Id.* at 5, 11. The court finds that Edwards has sufficiently stated a claim upon which relief may be granted. Edwards's cruel and unusual punishment claim against Dr. Boyd is sufficiently pleaded to survive initial review under 28 U.S.C. § 1915A.

### ii.   Deliberate Indifference to Edwards's Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05. "This conclusion does not mean, however, that every claim by a prisoner that

8

he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

The deliberate indifference standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (citation and internal quotation omitted). To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Edwards claims that Dr. Boyd, Dr. Pierce, Mertens, and Steppad violated his Eighth Amendment rights when they failed to treat his medical conditions. Docket 1 at 6. Edwards alleges that he was diagnosed with steel ankles and swollen lymph nodes before he entered custody. *Id.* at 6. Edwards also claims

9

that defendants diagnosed him with blurred vision, headache pain, hip pain, and PTSD. *Id.* at 6, 8, 14. Edwards claims that defendants knew of his medical needs because they diagnosed them, but deliberately chose not to treat them. *Id.* at 6, 8. The court finds that Edwards has sufficiently alleged that defendants acted with deliberate indifference to his serious medical needs. Edwards's deliberate indifference claim survives 28 U.S.C. § 1915A screening.

Edwards also claims that Cox, Sternhagen, and Thygeson were deliberately indifferent to his serious medical needs based on their supervisor roles. *Id.* at 6. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, the plaintiff in a suit . . . must plead that each government-official defendant, through his own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal citations omitted); *see also Buford*, 160 F.3d at 1203 n.7 (stating *Bivens* actions cannot be premised on respondeat superior liability and defendants are liable for their personal acts only). Edwards has failed to identify in his complaint the individual actions by the three supervisory defendants sufficient to state a *Bivens* claim upon which relief may be granted. Thus, Edwards's failure to protect claim against the supervisor defendants is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1).

Edwards also claims that Dr. Pierce was deliberately indifferent to Edwards's medical needs after he was sexually assaulted. Docket 1 at 6. Edwards's sexual assault is an objectively severe medical condition. *See Hill v. Anderson*, 2008 WL 319898 (D. Minn. Feb. 5, 2008); *see also Kahle v. Leonard*,

477 F.3d 544, 553 (8th Cir. 2007) ("[N]o reasonable prison official . . . could have concluded . . . that a detainee who was sexually assaulted . . . did not suffer a serious harm." (internal quotation omitted)). Edwards claims that Dr. Pierce knew of, but deliberately disregarded, Edwards's medical need by ordering Edwards back to the scene of the sexual assault and requiring Edwards to show his genitals to another female nurse after Edwards reported the sexual assault to him. Docket 1 at 6, 13, 15. Edwards also claims that Dr. Pierce denied Edwards psychological treatment because Dr. Pierce rarely checked on Edwards well-being after the sexual assault. *Id.* at 6. The court finds that Edwards has alleged sufficient facts that Dr. Pierce deliberately disregarded Edwards's serious medical needs after the sexual assault. Edwards's deliberate indifference claim survives 28 U.S.C. § 1915A screening.

### iii.    Failure to Protect

"[P]rison officials have a duty . . . to protect prisoners from violence . . . ." *Farmer*, 511 U.S. at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In order to prevail on a failure to protect claim, a prisoner must demonstrate two things. First, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998). Second, an inmate must demonstrate that prison officials were deliberately indifferent to that risk. *Id.* "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Id.*

11

Edwards claims that Steppad was in the room during the sexual assault and did nothing. Docket 1 at 6. Sexual assault presents a substantial risk of serious harm. *See Kahle*, 477 F.3d at 553. Edwards also alleges that Steppard knew of the risk (Dr. Boyd grabbing Edwards's genitals) because she was in the room and deliberately disregarded it by failing to act. Docket 1 at 6. The court finds that Edwards has alleged sufficient facts to show a failure to protect claim against Steppad. Edwards's failure to protect claim survives 28 U.S.C. § 1915A screening.

Next, Edwards claims that Dr. Pierce, Cox, Mertens, Stenhagen, Allen, and Thygeson threatened Edwards's safety when they did not accept his transfer requests or comply with PREA protocol after his alleged sexual assault. *Id.* at 7, 8. Edwards alleged facts that he was incarcerated under conditions posing a substantial risk of serious harm because he was incarcerated at the same facility where the person who allegedly sexually assaulted him is employed. *Id.* at 7. Edwards also claims that Dr. Boyd continued to sexually harass him by making sexual gestures at lunch. *Id.* Edwards also alleged facts that defendants knew of this risk because Edwards complained to each defendant that he feared for his safety and well-being. *Id.* He also reported the sexual assault to Dr. Pierce, Cox, and Mertens. *Id.* at 13-15. And Edwards repeatedly asked all defendants to transfer him because of Dr. Boyd. *Id.* at 7. The court finds that Edwards alleged sufficient facts of a failure to protect claim against Dr. Pierce, Cox, Mertens, Stenhagen, Allen, and Thygeson. Edwards's failure to protect claim survives 28 U.S.C. § 1915A screening.

12

### b. First Amendment Claim

Edwards claims that defendants violated his First Amendment rights when they retaliated against him for filing a PREA claim and incident report regarding the alleged sexual assault. *Id.* at 8.

Several circuits have found that a plaintiff may bring a *Bivens* claim for violation of the First Amendment. *Yiamouyiannis v. Chem. Abstracts Serv.*, 521 F.2d 1392, 1393 (6th Cir. 1975) ("We recognize that *Bivens* dealt with a Fourth Amendment violation, but its logic appears to us to be equally applicable to a First Amendment violation."); *Paton v. La Prade*, 524 F.2d 862, 870 (3d Cir. 1975) ("Thus, we believe the extension of the *Bivens* rule to violations of first amendment rights to be both justifiable and logical."); *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 14 F.3d 457, 464 (9th Cir. 1994) (finding that the plaintiffs sufficiently stated a *Bivens* claim under the First Amendment). But more recently, the United States Supreme Court has exercised caution as to expanding the scope of *Bivens* actions, and some circuits have followed suit. *See Wilkie*, 551 U.S. at 550 ("We have accordingly held against applying the *Bivens* model to claims of First Amendment violations by federal employers[.]"); *Iqbal*, 556 U.S. at 675 ("[W]e have declined to extend *Bivens* to a claim sounding in the First Amendment." (citing *Bush v. Lucas*, 462 U.S. 367 (1983))). The Eighth Circuit has yet to decide the issue whether *Bivens* provides a remedy for First Amendment claims. *Gonzalez v. Bendt*, 971 F.3d 742, 744-45 (8th Cir. 2020).

13

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court acknowledged that it had recognized three instances where a *Bivens* remedy is available: (1) a violation of the Fourth Amendment's prohibition on unreasonable searches and seizures; (2) a violation of the Fifth Amendments Due Process Clause for gender-based discrimination; and (3) a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 1854-55. But the Court explained that it now expresses caution as to judicial findings of implied causes of action under congressional statutes. *Id.* at 1856. And that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citing *Iqbal*, 556 U.S. at 675). The *Ziglar* Court laid out "[t]he proper test for determining whether a case presents a new *Bivens* context is" to determine whether "the case is different in a meaningful way from previous *Bivens* cases decided by the Court." *Id.* at 1859.

If the case is meaningfully different from past cases, the court should then ask "if there is an alternative remedial structure present." *Id.* at 1858. Because "if Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.' " *Id.* at 1858 (alterations in original) (quoting *Wilkie*, 551 U.S. at 550). Then the courts must weigh the "reasons for and against the creation of a new cause of action, the way common law judges have always done." *Wilkie*, 551 U.S. at 554. "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as

14

part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress . . . ." *Ziglar*, 137 S. Ct. at 1858.

> A case may be meaningfully different:
>
> [B]ecause of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

Edwards alleges that Dr. Boyd, Dr. Pierce, Steppad, Mertens, Cox, Sternhagen, Allen, and Thygeson violated his First Amendment rights by preventing Edwards from receiving compassionate release under the CARES Act and denying Edwards's request for medical treatment in retaliation for Edwards's PREA claim and incident report. Because the Supreme Court has never implied a *Bivens* cause of action for First Amendment retaliation, Edwards's claim involves a different constitutional right and is meaningfully different from previous *Bivens* cases.

"The [Supreme] Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.' " *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). The Supreme Court has not defined what a special factor is, but has stated "that the inquiry must concentrate on whether

15

the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. Edwards alleges that defendants retaliated against him for exercising his right to report a PREA violation. Edwards alleges that defendants retaliated by denying Edwards's requests for medical treatment and preventing Edwards from being eligible for compassionate release.

The Supreme Court has previously declined to create an implied damages action in a First Amendment suit against a federal employee in *Bush*. 462 U.S. at 390; *see also Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). In *Bush*, the Court declined to recognize a *Bivens* action because the cost, time, and energy associated with defending a *Bivens* action against a federal employee are significant and Congress is in a better position to evaluate the need for a damages action in a First Amendment suit against a federal employee. *Id.* at 388-89. Thus, the Court found there were "special factors counselling hesitation." *Id.* at 380.

Here, the court similarly finds that the cost, time, and energy associated with defending a *Bivens* action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant. The court finds that there are "special factors counselling hesitation" and declines to find a *Bivens* remedy for an inmate alleging retaliation under the First Amendment against a federal official.

16

### 3. Civil Conspiracy Claim

Edwards alleges that defendants conspired to conceal and cover up Dr. Boyd's alleged sexual assault. Docket 1 at 7, 13, 15. Edwards also alleges that defendants conspired to deprive Edwards of compassionate release under the CARES Act. *Id.* at 8.

To state a claim under 42 U.S.C. § 1985, a plaintiff must allege: (1) the defendants conspired, (2) the purpose of the conspiracy was to deprive him either directly or indirectly of his civil rights, (3) one or more of the conspirators did or caused to be done any act in furtherance of the conspiracy, and (4) as a result, another was injured in his person or property or deprived of having and exercising any vital privilege of a citizen. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir.1999); *Dubray v. Rosebud Hous. Auth.*, 565 F. Supp. 462, 466 (D.S.D. 1983). For § 1985(3) to apply, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971). "[E]vidence of purposeful discrimination must be produced to avoid dismissal of a § 1985(3) claim." *Schmidt v. Louise Big Boy*, No. 05-CV-05036-KES, 2007 WL 858419, at *10 (D.S.D Mar. 20, 2007).

Edwards's complaint fails to properly allege any element of a private conspiracy based on class or race under § 1985(3). Edwards claims that defendants conspired to conceal/cover-up the sexual assault and conspired to deprive him of compassionate release. Docket 1 at 7, 8, 13-15. But Edwards failed to plead purposeful discrimination or allege any facts that the defendants

17

were engaged in a private conspiracy premised on class or race. Thus, Edwards

fails to state a conspiracy claim against the defendants under 42 U.S.C.

§ 1985(3).

Edwards also brings a claim against defendants under 42 U.S.C. § 1986

for failure to prevent a violation of § 1985. Docket 1 at 1, 7. Under 42 U.S.C.

§ 1986,

> Every person who, having knowledge that any of the wrongs
> conspired to be done, and mentioned in section 1985 of this title,
> are about to be committed, and having power to prevent or aid in
> preventing the commission of the same, neglects or refuses so to do,
> if such wrongful act be committed, shall be liable to the party injured
> . . . .

"[A] cause of action under section 1986 is dependent upon a valid section 1985

claim." *Williams-Bey v. Kempker*, 192 F. App'x 569, 571 (8th Cir. 2006).

Because the court found that Edwards did not state a claim under 42 U.S.C.

§ 1985(3), he does not have a claim under § 1986. *See Kaylor v. Fields*, 661

F.2d 1177, 1184 (8th Cir. 1981) (stating dismissal of § 1986 claim was proper

because plaintiff did not state a claim under § 1985(3)). Edwards's civil

conspiracy claims are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and

1915A(b)(1).

## II.   Motion for Clerks to Send USM-285 Forms to Serve Defendants

Edwards filed a motion requesting USM-285 forms to serve all

defendants. Docket 5. After screening Edwards's complaint, the court found

that several of Edwards's claims survive § 1915A screening. Under the

screening order, the court will order the Clerk to send USM-285 forms to

Edwards. Thus, this motion (Docket 5) is denied as moot.

### III.    Motion Requesting Discovery

Edwards moves for this court to issue an order for discovery. Docket 6. Once defendants file an answer, under Fed. R. Civ. P. 26(f), the parties will meet to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Rule 26(a)(1), to discuss any issues about preserving discoverable information, and to develop a proposed discovery plan. Thus, Edwards's motion requesting discovery (Docket 6) is premature and therefore is denied.

### IV.    Motion Requesting Expert Testimony

Edwards moves for this court to appoint him an expert witness. Docket 7. 28 U.S.C. § 1915 entitles indigent prisoners to bring their legal claims to court without pre-payment of the usual fees. "There is, however, no similar provision which allows the Court to appoint expert witnesses for the express purpose of supporting a pro se litigant's claims." *Dale v. Dooley*, No. 4:14-CV-04003-LLP, 2015 WL 224969, at *4 (D.S.D. Jan. 15, 2015). "The plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant." *Hannah v. United States,* 523 F.3d 597, 601 (5th Cir. 2008); *see also Orr v. Valdez*, 2011 WL 5239223 at *2 (D. Idaho Nov. 1, 2011). Edwards's motion requesting expert testimony (Docket 7) is denied.

Thus, it is ORDERED:

1.  That Edwards's claims against defendants in their official capacity are dismissed under 28 U.S.C. §§1915(e)(2)(B)(i)-(ii) and 1915A(b)(1).

2.  That Edwards's sexual abuse claim against Dr. Boyd survives § 1915A screening.

3.  That Edward's deliberate indifference claim against Dr. Pierce, Dr. Boyd, Steppad, and Mertens survives § 1915A screening.

4.  That Edwards's failure to protect claims against Steppad, Dr. Pierce, Cox, Mertens, Sternhagen, Allen, and Thygeson survive § 1915A screening.

5.  That all other claims asserted against defendants are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6.  The Clerk shall send blank summons forms and Marshal Service Form (Form USM-285) to Edwards so that he may cause the complaint to be served upon defendants Dr. Pierce, Dr. Boyd, Steppad, Mertens, Cox, Sternhagen, Allen, and Thygeson.

7.  Edwards shall complete and send the Clerk of Courts a separate summons and USM-285 form for defendants. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

8.     The United States Marshal Service shall serve the completed
        summonses, together with a copy of the complaint (Docket 1) and
        this order, upon defendants.

9.     Defendants will serve and file an answer or responsive pleading to
        the amended complaints and supplement on or before 21 days
        following the date of service or 60 days if the defendants fall under
        Fed. R. Civ. P. 12(a)(2) or (3).

10.    Edwards will keep the court informed of his current address at all
        times. All parties are bound by the Federal Rules of Civil Procedure
        and by the court's Local Rules while this case is pending.

11.    Edwards's motion requesting discovery (Docket 6) and motion
        requesting expert testimony (Docket 7) are denied. Edwards's
        motion for USM-285 forms (Docket 5) is denied as moot.

Dated December 1, 2020.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE